UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Devon Industrial Group, LLC, *et al.*,

      Plaintiffs,

v.                                  Case No. 11-10313

Demrex Industrial Services, Inc., *et al.*,       Honorable Sean F. Cox

      Defendants.
_____/

**OPINION & ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

      This is a consolidated action involving an alleged breach of a Subcontract, which addressed the demolition, cleanup and asbestos removal of the interior of Ford Motor Company's, ("Ford"), Wixom Assembly Plant, ("the Plant"), located in Wixom, Michigan (hereinafter the demolition, clean-up and asbestos removal will be referred to as "the Project"). The Subcontract was signed by Devon Industrial Group, LLC, ("Devon"), which was the General Contractor for the Project, and Demrex Industrial Services, Inc., ("Demrex"), a Pennsylvania corporation, which was the Subcontractor tasked with the interior demolition and clean-up, ("the Project"). The asbestos abatement was handled by Altchem Environmental Services, Inc., ("Altchem"), a Pennsylvania corporation, which is an affiliate or sister corporation of Demrex. Altchem was not subject to the Subcontract; instead, it entered into a separate subcontract, which is not at issue in this action, with Demrex for that purpose.

      The Defendants filed their Motion to Dismiss with regard to numerous claims in Ford's

1

Amended Complaint and Devon's Second Amended Complaint, including Unjust Enrichment, Common Law and Statutory Conversion, Aiding and Abetting Common Law and Statutory Conversion, Fraudulent Conveyance and Alter Ego, contending that they fail to state claims upon which relief can be granted under Federal Rules of Civil Procedure 12(b)(6). The Plaintiff, Devon, filed its Motion for Partial Summary Judgment with regard to Count II, Quantum Meruit/Unjust Enrichment, in Demrex's First Amended Counterclaim.

The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decision making process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons that follow, this Court **DENIES** the Defendants' Motion to Dismiss and **GRANTS** Devon's Motion for Partial Summary Judgment.

## BACKGROUND

Demrex was incorporated in Pennsylvania in November of 2007. (Docket No. 146, at 3, ¶ 8.) It is owned and operated by Barry Portnoy, CEO and majority shareholder, and Jason Goldberg, President and minority shareholder. (*Id.* at 4, ¶¶ 10–11.) Portnoy also is the CEO and sole shareholder of Altchem, which is a sister company or affiliate to Demrex. (*Id.* at 4, ¶ 11.)

In June of 2009, Ford Motor Company started accepting bids for the Project. (*Id.* at 6, ¶ 20.) The Project consisted of cleaning out, demolishing and removing asbestos from the interior of the Plant. (Docket No. 168, at 8–9.) Upon the Project's completion, Ford planned to sell or lease the building to a potential buyer. (*Id.*) On February 23, 2010, Ford contracted with Devon, a Michigan limited liability company, to act as the Project's Construction Manager. (*Id.* at 9.) Ford's plan for the Project was to evaluate the bids and eventually refer the winning bidder to Devon, who would

2

then enter into a subcontract with the winning bidder consistent with the bid terms.  (*Id.*)

Demrex submitted the lowest bid of $5,490,000, without considering bond premiums, which amounted to $164,700.  (Docket No. 146, at 1, ¶ 1; Docket No. 161, at 4.)  Ford, thereafter, evaluated Demrex's bid.  During that time, Altchem assured Ford that it would handle the asbestos removal portion of the Project and provided bid information to Ford, accordingly.  (Docket No. 146, at 2, ¶ 2; Docket No. 168, at 9.)  Altchem also provided a cost estimate to Demrex for the asbestos removal portion of the Project, which was incorporated into Demrex's bid to Ford.  (Docket No. 153-2, at 8.) Given Demrex was a new, unproven company with no experience in asbestos removal, Ford contends that it relied on Altchem's assurances because it had been in existence for thirty years and had a proven track record of asbestos removal.  (Docket No. 168, at 8–9.)

Ford alleges that during the bid process, Demrex proposed that it be paid for the cost of demolition and clean-up by harvesting the scrap metal from the Plant and keeping the first $5,490,000 of the proceeds, and then sharing the remainder of those proceeds with Ford in a 70%/30% split in Ford's favor.  (Docket No. 146, at 1–2.)  Ford claims that the bid documents provided it with this option.  (Docket No. 168, at 8–10.)

After Ford was satisfied that Demrex and Altchem could handle the demolition and asbestos removal, it referred Demrex to Devon so that they could enter into a subcontract pursuant to the terms of the bid.  (*Id.* at 9–10.)  Throughout, Portnoy and Goldberg allegedly negotiated on behalf of Demrex and Altchem.  (*Id.* at 8–9; Docket No. 146, at 6–7.)  In the meantime, an early mobilization contract was entered into in January of 2010, in the amount of $50,000 to allow Demrex onsite to begin preparations for the Project.  (Docket No. 168, at 9.)  Devon and Demrex eventually signed the Subcontract on February 25, 2010, allegedly pursuant to the terms of the bid

3

proposal, agreeing to complete the Project by September 3, 2010, for a contract price of $5,604,700, which included the premiums for payment and performance bonds and a deduction of $50,000 for a payment made by Ford to Demrex with regard to the early mobilization contract.  (Docket No. 146, at 7.)  The Plant was to be placed in cold idle in late December of 2010.  (*Id.* at 9.)  Ford and Devon also entered into a scrap purchase agreement consistent with Demrex's proposal.  (*Id.*)  The Subcontract incorporated addenda with responses to questions raised by Ford during the bid process. (Id. at Ex. 3, 35–50.)  Among the addenda were post-bid addenda dated August 12, 2010, and September 14, 2010, which specifically stated that after Demrex obtained the lump sum price in scrap proceeds, all proceeds above and beyond that sum would be paid 70% to Ford and 30% to Demrex.  (*Id.*)   The Subcontract also required that Demrex secure two performance and two payment bonds written in favor of Ford.  (*Id.* at Ex. 3, at 51–62.)

After entering into the Subcontract, Demrex prepared a scrap handling protocol in which it acknowledged the scrap metal addenda in the Subcontract.  (Docket No. 146-5, at 5–7.)  Demrex, through Altchem's long relationship with First Sealord Surety, Inc., ("First Sealord"), a Pennsylvania corporation, eventually allowed it to secure two performance bonds and two payment bonds for the Project.  (Docket No. 146-4, at 51–64.)  Ford is the beneficiary of those bonds.  (*Id*.)  Demrex also entered into a separate subcontract with Altchem for the performance of the asbestos work.  (Docket No. 146, at 8.)   The contract price was for $1.2 million.  (*Id*.)

Although Demrex originally agreed to complete the Project by September 3, 2010, it requested and received two extensions, which effectively extended the deadline to December 15, 2010.  (*Id*. at 8–9.)  Even though it was granted these extensions, Demrex never completed the Project and allegedly left a significant amount of interior demolition, asbestos abatement, and

damage. (*Id.* at 2.) In some locations in the Plant, jobs weren't even started and their remained open wires and pits. (*Id.* at 2, 9; Docket No. 168, at 11–12.) It was also learned that Demrex failed to pay its subcontractors, suppliers and laborers, resulting in liens against the Plant amounting to $1,774,198.20. (Docket No. 146, at 2, 9–11; Docket No. 168, at 11–12.)

The Plant was eventually put in cold idle in late December 2010. (Docket No. 146, at 9–12; Docket No. 168, at 11.) After Demrex and First Sealord failed to cure the alleged defaults after repeated demands were made by Ford and Devon in December 2010 and January 2011, Devon terminated the Subcontract on January 17, 2011. (Docket No. 146, at 9–10, 15–16.)

Ford contends that it later learned that Demrex harvested $11,580,000 worth of scrap from the Plant, the proceeds of which were transferred mostly to the other defendants in the form of undocumented "loans" or payments for alleged unauthorized fees. (*Id.* at 10–11.) Ford alleges that $2.7 million worth of scrap proceeds were transferred from Demrex to Altchem for no apparent reason. (*Id.* at 10–11, 17; Docket No. 168, at 8.) Furthermore, two weeks after Devon terminated the Subcontract, Ford alleges that on or around January 31, 2011, Demrex issued a check to Portnoy for $3 million for an undocumented loan with no written terms. (Docket No. 168, at 8.) Ford also contends that a $1 million debit was taken from Demrex's bank account on January 10, 2011, and Portnoy cannot explain why that transaction occurred. (*Id.*) Goldberg was also allegedly paid unauthorized "consulting fees" with Project funds. (Docket No. 146, at 10–11, 17; Docket No. 166, at 3.) Prior to this action, First Sealord was in Bankruptcy. (Docket No. 146, at 3, 16.) Furthermore, Demrex filed a lien in the amount of $15,880,125 with the Oakland County Register of Deeds on the Plant on May 4, 2011, contending that the Subcontract amount was $23,310,355, and that $7,430,230.35 has already been received, resulting in a $15,880,125 deficiency. (*Id.* at 5,

12.)

# ANALYSIS

## I.     The Defendants' Motion to Dismiss Is Denied

The Defendants assert that Count I (Quantum Meruit), Count II (Common Law and Statutory Conversion), Count III (Aiding and Abetting Conversion), Count IV (Tortuous Interference with a Contract), Count VIII (Alter Ego) and Count IX (Fraudulent Conveyance) of Ford's Amended Complaint should be dismissed because they fail to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). (Docket No. 153, at 1–2.) The Defendants further request that this Court dismiss Count IV (Alter Ego), Count V (Conversion), Count VI (Aiding and Abetting Conversion) and Count VII (Alter Ego) of Devon's Second Amended Complaint for failure to state a claim upon which relief can be granted. (*Id.*) Ford and Devon contend that all the claims in the Defendants' Motion to Dismiss are without merit and were made in bad faith. (Docket 166, at 4–18; Docket 168, at 16–27.) For the reasons that follow, the Defendants' Motion is **DENIED**.

In addressing a complaint under Rule 12(b)(6), this Court "accept[s] all well-pleaded factual allegations of the complaint as true and construe[s] the complaint in the light most favorable to the plaintiff." *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007) (quoting *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Although a complaint need not contain 'detailed factual allegations,' it does require more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007)). "Thus, a complaint survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true,

6

to state a claim to relief that is plausible on its face.'" *Id.* at 623–24 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949.)

### A.   All the Counts that the Defendants Challenge in their Motion to Dismiss in Ford's Amended Complaint State a Claim

#### 1.   *Count I: Quantum Meruit*

In its Amended Complaint, Ford alleges, under the theory of quantum meruit, that it is entitled to relief because Demrex breached the Subcontract and kept the scrap metal profits for its own benefit.  (Docket No. 146, at 19–20.)  The Defendants contend that Ford cannot make a claim for quantum meruit because the Subcontract governs the same subject matter.  (Docket No. 153-1, at 4–5.)  The Defendants state that Ford is bound by the Subcontract, even though it is not a party to it, as a principal because Devon was Ford's agent as its General Contractor.  (*Id.* at 5.)  Ford contends that it is not subject to the Subcontract as a principal.  (Docket No. 168, at 9–11.)  In the alternative, Ford asserts that even if it is subject to the Subcontract as a principal, it may still plead unjust enrichment as an alternative theory of relief.  (*Id.*)

A contract implied-in-law is "imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended." *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat'l, Inc.*, 289 Fed. Appx. 916, 925 (6th Cir. 2008) (quoting *Cascaden v. Magryta*, 247 Mich. 267, 225 N.W. 511, 512 (1929)). "A contract may be implied in law where [1] there is a receipt of a benefit by a defendant from a plaintiff and [2] retention of the benefit is inequitable, absent reasonable compensation." *Id.* (quoting *Matter of Estate of Lewis*, 168 Mich. App. 70, 423

N.W.2d 600, 603 (1988)).

Federal Rules of Civil Procedure 8(d)(2) provides that "[a] party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Michigan courts now hold that the existence of the express contract bars a quantum meruit claim based on the same subject matter. *See Iverson Indus., Inc. v. Metal Mgmt. Ohio, Inc*., 525 F. Supp. 2d 911, 922 (E.D. Mich. 2007) ("There is no claim for unjust enrichment when there exists a valid contract covering the same subject matter."); *see also Morris Pumps v. Centerline*, 273 Mich. App. 187, 195, 199, 729 NW.2d 898, 906 (2006). The Michigan Court of Appeals recognized that where a "defendant was not a party to any . . . express contracts [between the same parties on the same subject matter]," the argument must fail because "the mere existence of [an] express contracts between [other parties] does not bar recovery from defendant in quantum meruit." *Morris Pumps*, 273 Mich. App. at 195, 199–200, 729 NW.2d at 904, 906. Here, there were no written contract signed by Ford and Demrex. Instead, the Defendants assert that Ford is subject to the Subcontract as a principal. In its Brief in Support of its Motion to Dismiss, Demrex states that courts look to the surrounding facts to determine if the agent had apparent authority to act on behalf of principal citing to a Michigan Court of Appeals case, and then states:

> Likewise, Devon, as Ford's general contractor/construction manager acted as an agent for Ford when Devon entered into the Subcontract with Demrex. Ford is a party to the express written contract and is therefore precluded from bringing a cause of action in unjust enrichment against any subcontractor of Demrex.

(Docket 153-1, at 11.) Thus, Ford merely cites the standard for determining whether an agent/principal relationship exists, and then makes a conclusory statement unsupported by argument or authority. Regardless, Demrex's assertion is premature at this early stage in the pleadings where

8

it is unclear whether the contract covers the same subject matter as the unjust enrichment claims. *See Abjuba Intern., LLC v. Saharia*, 2012 WL 1672713, No. 11-12936, at *17 (E.D. Mich. May 14, 2012).  Alternative pleading is appropriate here because a question of fact remains as to whether Ford is a party to the Subcontract. *See Id.* (citing *Date v. Sony Electronics, Inc.*, No. 07-cv-15474, 2010 WL 3702599, at *12 (E.D. Mich. Sept. 16, 2010) (plaintiffs can plead their claim for unjust enrichment as an alternative to their claims for breach of contract so long as questions of fact exist as to the existence of a claim based on contract).

### 2.      *Count II: Common Law and Statutory Conversion*

In the Amended Complaint, Ford argues, under the theories of common law and statutory conversion, that all the scrap metal that Demrex harvested was fraudulently converted by the Defendants. (Docket No. 146, at 21–22.) The Defendants argue that Ford cannot maintain an action in conversion where an express contractual agreement exists unless a duty separate and distinct from the contractual obligation is established.  (Docket No. 153-1, at 11–13.)  Ford asserts that a claim can be made for both conversion and breach of contract under a third party beneficiary theory in a complaint.  (Docket No. 168, at 18–22.)

Common law conversion is defined as "the intentional and distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein. *Hescott v. City of Saginaw*, No. 10-13713, 2012 WL 3236601, at *29 (E.D. Mich. Aug. 7, 2012).  The statutory cause of action for conversion is codified in M.C.L. § 600.2919a, and permits a plaintiff to obtain treble damages against a defendant who:

> buy[s], receiv[es], possess[es], conceal[s], or aid[s] in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

9

M.C.L. § 600.2919a(1)(b).  Regardless of whether Ford is making a claim for common law or statutory conversion, the same analysis applies.  *See Hoffmeyer v. Ingram*, No. 299868, 2011 WL 5555824, at *2–3 (Mich. App. Nov. 15, 2011).

The Western District of Michigan in *Trost v. Trost*, No. 1:09-cv-580, 2011 WL 4527372, at *10–12 (W.D. Mich. Sept. 28, 2011), recognized that "[i]t is possible for a party's conduct to result in both a breach of contract and a tort for common law conversion[,]" so long as the defendant's conduct constituted a breach of duty separate and distinct from the breach of contract. Thus, if a legal duty could not be enforced in the absence of the contract, a tort action may not be maintained. Here, genuine issues of material fact exist with respect to whether the Defendants committed a conversion by wrongfully exerting a distinct act of domain over Ford's property inconsistent with its rights. Like the Western District recognized in *Trost*, if Ford owned the scrap, and Ford and Demrex did not have a valid contract allowing Demrex to possess it, Demrex's refusal to return the scrap on its demand could constitute a civil conversion of the affected property.  *Id.* at *15. Recognizing that the same analysis applies to statutory and common law conversion, even if it contends that it is a third party beneficiary of the Subcontract, Ford can still plead statutory or common law conversion in its Amended Complaint.

### 3.   *Count III: Aiding and Abetting Conversion*

In its Amended Complaint, Ford argues that Portnoy, Goldberg and Altchem knowingly aided and abetted fraudulent conversion. (Docket No. 143, at 22–23.)  The Defendants assert that Ford cannot argue that Portnoy, Goldberg and Altchem engaged in aiding and abetting conversion, if it also alleges that they engaged in conversion. (Docket No. 153, at 13–14.)  Ford contends that it is entitled to plead the aiding and abetting theory of relief as an alternative pleading.  (*Id.*)

10

The Defendants cite to *George S. Hofmeister Family Trust Dated June 21, 1991 v. FGH Indus., Inc.*, No. 06-CV-13984-DT, 2008 WL 1809205, at *2 (E.D. Mich. April 21, 2008), to support their assertions, but that case actually supports Ford's theory that it may plead aiding and abetting as an alternative theory of relief. In *George S. Hofmeister Family Trust*, the Court recognized that under Michigan law defendants cannot be held liable for aiding and abetting conversion and conversion pursuant to M.C.L. § 600.2919a, but it specifically rejected the defendants assertions that the plaintiff may not still plead aiding and abetting conversion in the alternative. The Court went on to state that "[c]onstruing the complaint in the light most favorable to Plaintiffs, the court finds reasonable notice of various configurations in multiple alleged conversions, which gives rise to situations where Defendants Gruits or Fuhrman could have aided and abetted in a conversion that they did not personally undertake." *Id.* Likewise, Ford is merely posing multiple situations where Demrex is the converter while Altchem, Goldberg and Portnoy are merely the aiders and abetters or vice versa.

### 4.     *Count IV: Tortious Interference with a Contract*

Ford's Second Amended Complaint alleges that Demrex tortuously interfered with its contract with Devon, resulting in Devon being unable to complete the Project and transfer the scrap metal proceeds. (Docket No. 146, at 23–24.) The Defendants contend that Ford failed to allege facts sufficient to support its claim of tortious interference with a contract because it cannot prove that they intentionally or maliciously interfered with a contract. (Docket No. 153-1, at 19–21.) In support of their assertion, the Defendants contend that they have legitimate business reasons for keeping the scrap metal proceeds. (*Id.*)

The elements of tortious interference with a contract under Michigan Law are "(1) the

11

existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Bailey v. Scoutware, LLC*, No. 12-10281, 2012 WL 2711458, at *7 (E.D. Mich. July 9, 2012) (quoting *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc*., 268 Mich. App. 83, 89–90, 706 N.W.2d 843, 848–49 (2005)). The Defendants rely on *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010), and a number of other cases that address tortious interference with a business relationship or expectancy for their argument that legitimate business reasons negate the intent or malicious interference element of tortious interference with a contract. "Intentional or malicious interference with a contract" is not an element of tortious interference with a contract. Instead, the Defendants seem to refer to an element of tortious interference with a business relationship or expectancy. *Id.* at 286–87. In Michigan, tortious interference with a contract is a cause of action distinct from tortious interference with a business relationship or expectancy. *Health Call of Detroit*, 268 Mich. App. at 89, 706 N.W.2d at 848. Therefore, for the purposes of this Order, it is assumed that the Defendants are challenging the third element of tortious interference with a contract, "an unjustified instigation of the breach by the defendant."

In Ford's Amended Complaint, Ford alleged that Demrex had knowledge of Ford's contract with Devon and the Scrap Metal Agreement, but fraudulently distributed the proceeds of the scrap metal to the other defendants. As a result of Demrex's alleged breach of the Subcontract, Ford contends that Devon was unable to perform under its contract with Ford and was unable to distribute the scrap metal proceeds to Ford according to the Subcontract. It is clear from these facts that Ford may be able to satisfy the third element of tortious interference with a contract. *Id.* at 89–91, 706 N.W.2d at 848–850. Regardless if the analysis concerned tortious interference with a business

relationship or tortious interference with a contract, Demrex's assertion that it had a legitimate business reason for not distributing the scrap metal proceeds to Ford goes more towards establishing whether a breach occurred with regard to the Subcontract. Both parties don't dispute that there is a genuine issue of material fact with regard to that issue.

### 5.    *Count VIII: Alter Ego*

Ford's Amended Complaint asserts that Demrex is the alter ego of Altchem, Portnoy, and Goldberg, and that it is appropriate to pierce the corporate veil of Demrex with regard to its alleged wrongdoings. (Docket No. 146, at 29–32.) The Defendants state that Ford failed to allege sufficient facts to support its claim of alter ego in its Amended Complaint. (Docket 153-1, at 11–18.) They claim that Ford has provided only bald, conclusory accusations. (*Id*.)

Under Michigan law, to succeed in an alter ego claim and pierce the corporate veil, a plaintiff must establish three elements: "First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff." *First Presbyterian Church of Ypsilanti v. H.A. Howell Pipe Organs, Inc*., No. 07-13132, 2010 WL 419972, at *8 (E.D. Mich. Feb. 1, 2010) (quoting *Nogueras v. Maisel & Assocs. of Mich*., 142 Mich. App. 71, 86, 369 N.W.2d 492, 498 (1985). Factors considered to determine whether a corporate entity is used as a mere instrumentality include "undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the corporation is merely a sham." *Id.* (quoting *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc*., 872 F.2d 702, 704–05 (6th Cir. 1988)).

13

The Defendants' contention that Ford has not alleged sufficient facts to support its claim for alter ego is without merit. Ford's Amended Complaint is a surprisingly detailed pleading, which describes Demrex's alleged undercapitalization; commingling of funds; and sharing of personnel, records, officers, office space, and even website. (Docket No. 146, at 29–32.) It further describes the alleged undocumented "loans" with no terms issued to Portnoy and unauthorized "consulting fees" on the part of Goldberg, which were funded by the scrap metal proceeds. (*Id*.) Ford even lists the dates of the transactions, including the issuance of a $3 million dollar check written in favor of Portnoy. (*Id*.) Ford finally notes the lack of corporate formalities on the part of Demrex and how it shares a common CEOs and shareholders. (*Id*.) Thus, Demrex's assertion that Ford only relies on the fact that it shares a common director and shareholder to support its claim is incorrect.

### 6.      *Count IX: Fraudulent Conveyance*

The Defendants assert that Ford's Amended Complaint under Federal Rules of Civil Procedure 9(b) fails to allege facts sufficient to support a claim of fraudulent conveyance, pursuant to the Uniform Fraudulent Transfer Act, because it does not state the time, place or content of the fraud. (Docket No. 153-1, at 18–19.) Instead, the Defendants contend that Ford's Amended Complaint only provides unsupported conclusory assertions. (*Id*.)

In *Coleman-Nichols v. Tixon Corp*., 203 Mich. App. 645, 658–62, 513 N.W.2d 441, 448–50 (Mich. App. 1994), the Michigan Court of Appeals held that a plaintiff may establish a claim of fraudulent conveyance under section 7 of the Uniform Fraudulent Transfer Act by establishing "badges of fraud to support an inference of actual intent to defraud." The court recognized that "[t]hese badges of fraud are not conclusive evidence, but may be strong or weak depending upon their nature and number occurring in the same case. Often recognized badges of fraud include: lack

14

of consideration for the conveyance; a close relationship between transferor and transferee; pendency or threat of litigation; financial difficulties of the transferor; and retention of the possession, control, or benefit of the property by the transferor." *Id.* at 659–60, 513 N.W.2d at 449 (citing *Kelley v. Thomas Solvent Co.*, 725 F. Supp. 1446, 1452, 1457 (W.D. Mich. 1988). The court further held that the plaintiff presented sufficient badges of fraud to support an inference of actual intent to defraud, including evidence of an unsecured loan issued by the corporation in favor of the corporation's general manager, the payment of fees by the corporation for the benefit of its officers without consideration, and "weaknesses" in documenting and misuse of business expenses. (*Id.* at 660–61, 513 N.W.2d at 449–50.)

Here, the Amended Complaint specifically cites the Uniform Fraudulent Transfers Act and asserts that Demrex fraudulently conveyed millions of dollars to Altchem, Portnoy and Goldberg as consideration for undocumented loans and unauthorized fees. (Docket No. 146, at 32–33.) The Amended Complaint even goes as far as to state that on January 31, 2011, Altchem issued a check to Portnoy in the amount of $3 million dollars with funds secured by harvesting scrap metal. (*Id.*) Viewing these facts in a light most favorable to the claimant, it is apparent that they have stated a claim upon which relief can be granted.

### B.   All the Counts that the Defendants Challenge in their Motion to Dismiss in Ford's Amended Complaint State a Claim

The Defendants assert that Count IV (Alter Ego), Count V (Common Law and Statutory Conversion), Count VI (Aiding and Abetting Conversion) and Count VII (Alter Ego) in Devon's Second fail to state a claim upon which relief can be granted. (Docket No. 153.)

In their Motion to Dismiss and Memorandum of Law in Support of their Motion to Dismiss, the Defendants merely incorporate the same legal arguments that they made with regard to Ford's

Amended Complaint and apply them to Devon's Second Amended Complaint. (Docket 153-1, at 11–15.)  The Defendants' assertions that Counts IV (Alter Ego) and VII (Alter Ego) in Devon's Second Amended Complaint fail to state a claim are without merit.  Devon's Second Amended Complaint  is even more detailed than Ford's Amended Complaint and contains many of the same allegations and assertions of fact with regard to Ford's claims in its Amended Complaint.  (*Id.*) The Second Amended Complaint supports its assertion that Demrex is the mere alter ego of Altchem, Portnoy and Goldberg and that Altchem is the mere alter ego of Demrex by stating that Demrex and Altchem share the same owners, offices, accounting records, address, among other things.  (*Id.* at 8–9, 11–12, ¶¶ 43–50, 63–69.)  In addition, the Second Amended Complaint, in detail,  asserts that Demrex did not maintain corporate formalities and fraudulently made undocumented loans through Altchem with scrap metal proceeds.  (*Id.* at 12, ¶¶ 43, 45–50, 66–69.)  The Second Amended Complaint also describes that Devon suffered damages as a result of the alleged fraud. (*Id.* at 9, 12, ¶¶ 50, 68–69.)

Furthermore, this Court has already addressed the issues, arguments and case law that the Defendants present with regard to Devon's claims of conversion and aiding and abetting conversion in Count V and VI, respectively. Thus, it is for the foregoing reasons that the Defendants' Motion to Dismiss is **DENIED.**

## II.    **Devon's Motion for Partial Summary Judgment Is Granted**

Devon contends that this Court should dismiss Count II (Unjust Enrichment) of Demrex's First Amended Counterclaim because the parties agree the Subcontract governs the subject matter of this action.   (Docket No. 170, at 9–10.)  Demrex contends that it is entitled to plead unjust enrichment because it seeks additional compensation for work performed outside the Subcontract.

16

(Docket No. 175, 1–7.)

Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). We view the record in the light most favorable to the nonmoving party and all reasonable inferences will be drawn in favor of that party. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). "When the non-moving party fails to make a sufficient showing of an essential element of [the non-moving party's] case on which [the non-moving party] bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012).

In *Manasher v. NECC Telecom*, No. 06-10749, 2007 WL 2713845, at *13 (E.D. Mich. Sept. 18, 2007), this Court held that "[i]t is axiomatic that a court will not imply a contract where an express contract exists covering the same subject matter."   The Court further recognized that "[i]f the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract.  In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." *Id.* (quoting *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F. Supp. 484, 491).   Thus, because the parties do not doubt the existence of the Subcontract, and only dispute whether the Subcontract addresses the dispensation of the scrap metal proceeds and the additional compensation for work performed outside the Subcontract, Demrex cannot maintain its claim for unjust enrichment/quantum meruit.   Therefore, Devon's Motion for Partial Summary Judgment is **GRANTED.**

## CONCLUSION & ORDER

17

For the reasons set forth above, **IT IS ORDERED** that Defendants' Motion to Dismiss is

**DENIED** and Devon's Motion for Partial Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  October 11, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record

on October 11, 2012, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

18